Case 4:19-cv-02606 Document 94 Filed on 11/22/22 in TXSD Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
November 22, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHERYL L. PRESTON, | § | |
|     Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-02606 |
| | § | |
| INTERNATIONAL LONGSHOREMEN'S | § | |
| ASSOCIATION LOCAL 24, et al., | § | |
|     Defendants. | § | |

## **MEMORANDUM ORDER AND OPINION**

Pending before the Court is a joint motion for summary judgment filed by Defendants International Longshoremen's Association, Local 24 ("Local 24"), West Gulf Maritime Association ("WGMA"), and APS Stevedoring LLC ("APS") (Dkt. 82), and motions (1) to lift stay, compel arbitration, and impose sanctions for Defendants' refusal to submit the case to arbitration (Dkt. 85) and (2) to set aside the Collective Bargaining Agreement ("CBA") (Dkt. 90) filed by Plaintiff Cheryl L. Preston. After carefully reviewing the motions, response, replies, summary judgment record as a whole, and the applicable law, the Court finds that Defendants' motion should be GRANTED and Preston's motions should be DENIED.

### FACTUAL BACKGROUND

Preston has held the position of Longshoreman with APS Stevedoring LLC ("APS"), which is part of the West Gulf Maritime Association ("WGMA"), since 2005.

1

(Dkt. 64 at 1). She is a member of the AFL-CIO's International Longshoreman's Association, Local 24 ("Local 24"). (Dkt. 64 at 1). She worked for APS in the Port of Houston without incident until 2014. (Dkt. 64 at 6).

Preston suffered two injuries, in 2014 and 2015, that each required lengthy medical leaves. (Dkt. 64 at 6). Upon her return to work, Preston began to experience harassment from other employees (who questioned how a new-to-them employee had a more-senior status). (Dkt. 64 at 6). Preston describes the harassment as including homophobic slurs, physical threats to both Preston and her daughter, disclosure of Preston's private medical information, and incidents of actual violence. (Dkt. 64 at 7-9).

Preston reported the incidents to her WGMA bosses, her union representatives, and the Houston Police Department. (Dkt. 64 at 7-9). One of the individuals involved was suspended for six months. (Dkt. 64 at 7). Another individual was issued a permanent suspension, but that decision was overturned. (Dkt. 64 at 7). Overall, Preston found the response from APS, the WGMA, and Local 24 to be grossly inadequate. (Dkt. 64 at 6-11).

Preston sued APS, WGMA, Local 24, and several individual defendants, alleging violations of Title VII (race, religion, and sex discrimination, as well as unlawful retaliation for Title-VII-protected activity and a hostile working environment), a number of common-law claims (negligence, failure to train, indifferent policies, assault, battery, bystander liability, and intentional infliction of emotional distress), and a Health Insurance Portability and Accountability Act ("HIPPA") violation. (Dkt. 64 at 11-16).

APS, WGMA, Local 24 moved to compel arbitration, citing the collective bargaining agreement ("CBA") that Preston worked under. (Dkt. 55). That CBA had been modified by a memorandum of understanding ("MOU") in 2013, which provided a two-step grievance and arbitration process for employment-law violations. (Dkt. 61-3 at 9). The Court ordered arbitration for Preston's statutory claims. (Dkt. 70). The Step 1 decision issued on December 1, 2021; the Step 2 appeal decision issued in February 2022. (Dkt. 82 at 5). Under the terms of the MOU, the Step 2 decision constituted a final and binding decision—in Defendants' favor—of Preston's statutory claims. (Dkt. 61-3 at 12). Defendants' then moved for partial summary judgment of Preston's statutory claims. (Dkt. 82).

## LEGAL STANDARD

**Federal Rule of Civil Procedure 56(a)**

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is "genuine" if the evidence, taken as a whole, could lead a rational trier of fact to find for the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Summary judgment reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1197 (5th Cir. 1986).

A summary judgment movant who does not bear the burden of persuasion at trial can satisfy its initial burden on the motion by pointing to the non-movant's lack of evidence to support an essential element of its claim or defense. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant carries that initial burden, the burden shifts to the party opposing the motion to present competent summary judgment evidence showing the existence of a genuine fact dispute. *See Matsushita*, 475 U.S. at 586-87. "[T]he nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of [her] pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). Rather, the nonmoving party must "go beyond the pleadings" and submit competent summary judgment evidence "showing that there is a genuine issue for trial." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks and citation omitted). *See also Matsushita*, 475 U.S. at 586 (To avoid summary judgment, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts.").

Conclusory allegations and unsubstantiated assertions do not satisfy the nonmovant's summary judgment burden. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "In assessing whether genuine disputes of material fact exist, the court may not undertake to evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes." *Matter of Green*, 968 F.3d 516, 520 (5th Cir. 2020) (internal quotation marks and citation omitted). The court "must instead view all facts in favor of the non-moving party," and draw all reasonable inferences in the non-movant's favor. *Id.*

4

## ANALYSIS

### I. Defendants' Motion for Partial Summary Judgment

Defendants argue that summary judgment on Preston's employment claims is appropriate because "the [court-ordered] grievance process has been completed, a final and binding determination of Plaintiff's employment claims has been made, and [] each employment claim [] has been considered and conclusively decided." (Dkt. 82 at 5). In two nearly-identical filings—(1) a response to Defendants' motion for summary judgment (Dkt. 83) and (2) a motion to set aside the CBA (Dkt. 90)—Preston raises several arguments in opposition. For the reasons discussed below, the Court does not accept Preston's arguments and agrees with Defendants that summary judgment on Preston's employment claims is warranted.

As an initial matter, Preston argues that the two-step grievance procedure outlined in the MOU that modified the CBA does not constitute "arbitration," and thus the court-ordered arbitration of Preston's employment claims has not yet occurred. (Dkt. 83 at 3-4). Not so. The two-step procedure outlined in the MOU constitutes the "Grievance and Arbitration process" that this Court ordered for Preston's employment claims. (Dkt. 70, 81).[1] The Defendants did not seek, and this Court did not order, a different arbitration process than the one required by the CBA.

---

[1] Preston, citing an unsigned draft order that was submitted by the parties, argues that the Court ordered arbitration on all of Preston's claims. (Dkt. 83 at 3). This is incorrect. The Court ordered arbitration only for Preston's statutory—*i.e.*, employment—claims. (Dkt. 70).

5

Preston's contentions that (1) "[t]he grievance procedure itself is independent and has no bearing on the order to arbitrate, Plaintiff's Title VII judicial claims, and really all of Plaintiff's claims in this case since the motion to arbitrate was filed," and (2) "[t]he CBA does not unequivocally state that Plaintiff loses the right to pursue judicial claims with respect to her Title VII claims nor does it expressly grant the arbitrator authority to decide statutory claims" are similarly mistaken. (Dkt. 83 at 3). The MOU makes clear that complaints of violations of employment law, "including statutory claims . . . will be resolved <u>solely</u> by the grievance and arbitration provisions of the [CBA]. (Dkt. 61-3 at 8) (emphasis added). Indeed, the Court finds that the language in the MOU is sufficiently clear to have put Preston on notice that her statutory claims were subject to the grievance procedures contained therein. This distinguishes Preston's case from the Eleventh Circuit's *Brisentine v. Stone & Webster Eng'g Corp* decision. 117 F.3d 519, 524 (11th Cir. 1997) ("[I]n this case the arbitrator only has authority to interpret the collective bargaining agreement; the arbitrator does not have the authority to resolve statutory claims.").

Preston further contends that the CBA does not apply to her because she "is not a party to the CBA." (Dkt. 83 at 10). Again, this is incorrect. The MOU makes clear that its grievance and arbitration procedure provides "the exclusive remedy with respect to disputes arising between the union or any person working under the Agreement and the Association or any employer." (Dkt. 61-3 at 8). Preston's attempt to place herself outside of the CBA's scope are belied by her own pleadings in this case, in which Preston has (1) acknowledged being hired by the WGMA and being a member of Local 24, and (2)

6

admitted to using the MOU's grievance and arbitration procedures in the past. (Dkt. 64 at 6, 7).

Preston alternatively argues that "this entire case is not subject to the CBA" because the MOU states that its grievance and arbitration provision "does not apply to claims for worker's compensation benefits and [National Labor Relations Act]/[National Labor Relations Board] claims." (Dkt. 83 at 10). But Preston has brought no such claims here. (Dkt. 64). And the statutory claims Preston has brought clearly fall within the scope of the MOU's grievance and arbitration provision. *See supra*. Thus, Preston's attempt to evade the scope of the CBA fails.

Preston further contends that the CBA is unconscionable, unfair, prejudicial, and not written in good faith. (Dkt. 90 at 10). Under Texas law, "[u]nconscionability includes two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself." *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002). "[C]ourts may consider both procedural and substantive unconscionability of an arbitration clause in evaluating the validity of an arbitration provision." *Id*. at 572 (emphasis added).

Preston appears to argue that the CBA's arbitration provision is substantively unconscionable, claiming that "arbitration is not automatic if the employee feels that he or she was not properly heard or that a decision was not properly made." (Dkt 90 at 10). But this argument, like Preston's other arguments, fails due to Preston's misunderstanding of

7

what entails "arbitration." The two-step grievance procedure outlined in the MOU is itself an arbitration procedure that provides an initial review of, and findings regarding, an employee's claims and an appeal of those initial findings. (Dkt. 61-3 at 8). Preston takes issue with the outcome of that procedure, but it cannot be said that the procedure was so unfair as to shock the conscience. See *Muzquiz v. Para Todos, Inc.*, 624 S.W.3d 263, 276 (Tex. App.—El Paso 2021, pet. denied) ("A contract is substantively unconscionable where its inequity shocks the conscience.").

Finally, Preston argues that because the Court stayed and administratively closed these proceedings pending arbitration (Dkt. 72), the Defendants must file a motion to reopen before filing a motion for summary judgment. (Dkt. 83 at 4). The Court disagrees. This matter was stayed pending an arbitration procedure that is now complete. Defendants' motion for summary judgment is ripe for consideration, and, in light of the analysis above, the motion should be granted. Correspondingly, Preston's motion to set aside the CBA, which largely echoes her response to Defendants' motion for summary judgment, should be denied.

## II. Preston's Motion to Lift Stay, Motion to Compel Arbitration, and Motion to Impose Sanctions for Defendants' Refusal to Submit the Case to Arbitration (Dkt. 85)

Preston initially presented her motion to lift stay, compel arbitration, and impose sanctions in June 2021. (Dkt. 74). The Court denied that motion in October 2021, stating that "every step" of the Grievance and Arbitration process in the CBA "is to be completed." (Dkt. 81). The Step 1 grievance process occurred the following month, and the Step 1

8

decision issued shortly thereafter. (Dkt 86 at 5). The unanimous, final, and binding Step 2 decision issued a little over two months later. (Dkt 86 at 5). Defendants then filed a motion for partial summary judgment on those resolved claims. (Dkt 82).

After the arbitration process concluded, and after Defendants filed their motion for partial summary judgment, Preston re-filed her motion to lift stay, compel arbitration, and impose sanctions. (Dkt. 85). Preston's motion, which is identical to the motion that was denied by the Court eight months earlier, fails to mention the fact that the arbitration proceedings she is seeking to compel have occurred. The Court attributes this error to Preston's misunderstanding of what constitutes "arbitration" in this dispute (*see supra*). In any event, Preston's motion to lift stay, compel arbitration, and impose sanctions is again denied.

## CONCLUSION

Defendants' motion for partial summary judgment is **GRANTED**. Preston's motions to lift stay, compel arbitration, impose sanctions, and set aside the CBA are **DENIED**.

SIGNED at Houston, Texas on November 22, 2022.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE

9